**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**AT LONDON**

| | |
|---|---|
| JOANNE FARMER MORRIS, <br>     Plaintiff, <br><br> V. <br><br> COMMISSIONER OF SOCIAL SECURITY <br>     Defendant. | CIVIL ACTION NO. 6:16-cv-00169–KKC <br><br> **OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

Plaintiff Joanne Farmer Morris brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision denying her claims for a period of disability and disability insurance benefits, and a consolidated claim for supplemental security income. The Court, having reviewed the record, will **AFFIRM** the decision of the Commissioner of Social Security.

## I. Procedural background and the administrative decision

Morris was born on October 8th, 1955, and she filed a claim for a period of disability and disability insurance benefits, alleging disability beginning on December 30, 2010. (AR 433). On July 27, 2012, administrative law judge ("ALJ") Don. C. Paris issued a decision finding the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Upon review of that decision, this Court reversed and remanded the matter to the Commissioner of Social Security for further proceedings in accordance with the fourth sentence of section 205(g) of the Social Security Act. (Civil Action Number 6:13-cv-00192-GFVT).

While judicial review of Morris' disability insurance claim was pending before this Court, Morris filed subsequent electronic claims for Title II and Title XVI disability benefits on September 5, 2013. Following remand, the ALJ has now consolidated the claim files to create a single electronic record for a new decision on the consolidated claims. The ALJ has issued a decision finding that Morris was not disabled as to either claim.

In denying Morris' claims, the ALJ engaged in the five-step sequential process set forth in the regulations under the Social Security Act. 20 C.F.R. § 404.1520(a)–(e); *see, e.g.*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

At step one, the ALJ determined that Morris has not engaged in substantial gainful activity since December 30, 2010, the alleged onset date of disability. (AR 435).

At step two, the ALJ found that Morris has the following severe impairments: generalized osteoarthrosis with multiple-joint pain; morbid obesity; type 2 diabetes mellitus; and degenerative disc disease of the lumbar spine. (AR 435).

At step three, the ALJ found that Morris does not have an impairment or a combination of impairments that meets or medically equals the severity of one of the listed impairments of the federal regulations. (AR 436-437).

Before proceeding to step four, the ALJ found that Morris has:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), with the following limitations. The claimant can lift and carry ten pounds occasionally, and less than ten pounds frequently. She can stand/walk two hours, and sit six hours, out of an eight-hour workday. She never should climb ladders, ropes, and scaffolds. She occasionally can climb stairs and ramps. She frequently can balance. She occasionally can stoop, kneel, crouch, or crawl.

(AR 437-438).

At step four, the ALJ found Morris capable of performing past relevant work as a billing clerk, a referral clerk, and a receptionist. (AR 451). A vocational expert testified, and the ALJ found, that Morris has past relevant work as: a billing clerk (SVP 4 semi-skilled,

sedentary exertion work); a referral clerk (SVP 3 semi-skilled, sedentary exertion work); and a receptionist (SVP 4 semi-skilled, sedentary exertion work). (AR 451). Considering Morris' residual functional capacity, the ALJ found that Morris was capable of performing these jobs. (AR 451).

Thus, the ALJ found that Morris has not been under a disability for purposes of her application for disability benefits or her application for supplemental security income. (AR 451). The ALJ's decision became the final decision of the Commissioner of Social Security when the Appeals Council found no reason to assume jurisdiction (AR 422). Therefore, Morris seeks judicial review of the ALJ's decision by this Court. This Court affirms the ALJ's decision.

## I. Discussion

As a preliminary matter, the Court recognizes that its review of the decision by the ALJ is limited to determining whether the decision "is supported by substantial evidence and was made pursuant to proper legal standards." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (internal quotation marks omitted). "Moreover, '[w]hen deciding under 42 U.S.C. § 405(g) whether substantial evidence supports the ALJ's decision, we do not try the case *de novo,* resolve conflicts in evidence, or decide questions of credibility.'" *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

Additionally, "[a]s long as the ALJ cited substantial, legitimate evidence to support [her] factual conclusions, we are not to second-guess: 'If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.'" *Id.* (quoting *Bass*, 499 F.3d at 509).

Morris submits two arguments to this Court. First, she argues that the ALJ erred in failing to "address all of the claimant's allegations as severe impairments." (DE 13-2, Pl.

3

Mem. at 4). Second, she argues that the ALJ erred in his treatment of Morris' treating physicians. *Id.* at 6.

## A. ALJ's treatment of Morris' allegations of severe impairments

Morris' objection is to the ALJ's findings at step two of his analysis. *Id.* at 4. At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 C.F.R. § 404.1520(c); 20 C.F.R. 416.920(c). An impairment is "severe" when it significantly limits an individual's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). At step two, the burden of proof remains on the claimant. *See Walters v. Commissioner of Social Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

In this case, Morris lists a litany of impairments that she believes the ALJ erred in not deeming "severe." *See* (DE 13-2, Pl. Mem. at 4). In this Circuit, however, if an ALJ finds that the claimant has at least one severe impairment, continues on through the sequential evaluation process, and properly considers all of a claimant's impairments in determining residual functional capacity, there is no reversible error. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Winn v. Commissioner of Social Sec.,* 615 Fed.Appx. 315, 326 (6th Cir. 2015).

The ALJ found the following severe impairments: generalized osteoarthrosis with multiple-joint pain; morbid obesity; type 2 diabetes mellitus; and degenerative disc disease of the lumbar spine. (AR 435). The record shows that after finding those severe impairments, the ALJ continued on through the sequential evaluation process, extensively detailing his consideration of Morris' impairments, including those that were not deemed severe. *See* (AR 435-451). Specifically, the ALJ considered the following non-severe impairments at later steps, including during his determination of Morris' residual functional capacity:

4

cardiovascular problems (i.e., mitral and tricuspid valve regurgitation, left atrial enlargement and left ventricular hypertrophy, aortic insufficiency, chronic ischemic heart disease, and atherosclerosis) (AR 440, 441, 445, 446, 447, 448, 449); hypertension (AR 439, 440, 441, 442, 444, 445, 446, 447, 448); dyspnea (i.e., shortness of breath) (AR 439, 440, 441, 442, 443, 444, 447, 448); peripheral vascular disease (AR 439, 446); lower extremity edema (AR 440, 441, 442, 444, 445); hypothyroidism (AR 440, 441, 444, 445, 447, 448); overactive bladder (AR 441, 445); sciatica (AR 440, 442); chronic pain (AR 438, 439, 441, 442, 443, 444, 445, 446, 447, 448); mental impairments (i.e., anxiety and depression) (AR 440, 443, 444, 445, 446, 447, 448); chronic fatigue (i.e., sleep disorder) (AR 439, 440, 443, 444, 445); GERD (AR 445, 446, 448); fibrocystic breast disease (AR 445); heel spur (AR 447); diabetic retinopathy (i.e., vision problems) (AR 440, 441, 447); left bundle branch block (AR 448); and post-surgery right knee torn meniscus (AR 439, 440, 446).

Because the ALJ properly considered these non-severe impairments when determining Morris' residual functional capacity, it is "unnecessary to decide" whether the ALJ erred in failing to classify these impairments as severe. *See Fisk v. Astrue,* 253 Fed.Appx. 580, 583-584 (6th Cir. 2007) (citing *Maziarz,* 837 F.2d at 244).

In his lengthy discussion of Morris' residual functional capacity, the ALJ considered the entire litany of impairments listed in Morris' memorandum, with the exception of specifically mentioning allegations of dumping syndrome and varicose veins. *See* (DE 13-2, Pl. Mem. at 4). However, Morris has pointed to no medical records indicating that either impairment has been diagnosed beyond Morris' own subjective complaints. For dumping syndrome, Morris points the Court to the hearing transcript where she mentions the words "dumping syndrome," but offers no details or explanation as to the limitations. (AR 481). As for varicose veins, Morris points the Court to a "problem list" contained in medical records from Family Medical Care of Clay County from an unknown author. (AR 1010). Aside from a bare listing

amongst twenty-seven other impairments, these records contain no further detail on Morris' alleged impairment due to varicose veins; within the actual medical records that are signed by a physician, varicose veins are not listed as one of the "chief complaints/reasons for visit" (AR 1012); and the "historian" of record for the visit is labeled "self." (AR 1012). Finding no other evidence of the impairments in the record, the evidence of both impairments appears to be subjective complaints by Morris. "The ALJ's findings as to a claimant's credibility are entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). In this case, the ALJ weighed allegations by Morris "[b]ased upon a review of the record as a whole," including a lack of objective evidence, and found that overall the "claimant's allegations [are] partially credible." (AR 451). This Court finds no error of law in the ALJ's analysis.

### B. ALJ's use of the opinions of Morris' treating physicians

ALJs must "evaluate every medical opinion [they] receive" about a claimant and give "controlling weight" to opinions from treating sources "[i]f [they] find that a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c), (c)(2). An ALJ must provide "good reasons" for not giving a treating physician's opinion controlling weight. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). In this case, the ALJ provided good reason for each of the treating physicians he chose to discount.

The thrust of Morris' argument is toward the ALJ's use of Dr. Douglas Irwin's opinions. See (DE 13-2, Pl. Mem. at 6-9). Dr. Irwin is a primary care physician who treated Morris prior to the middle of 2011. On April 22, 2011, Dr. Irwin completed residual functional capacity questionnaires relating to Morris' arthritis, diabetes, and physical abilities. (AR 376-380, 381-385, 386-391). In reviewing these residual functional capacity questionnaires,

6

the ALJ pointed out that there are internal inconsistencies as to Morris' abilities regarding substantially similar questions. (AR 449). While internal inconsistency provided the ALJ at least one reason to view Dr. Irwin's opinion skeptically, Morris argues that "[t]he ALJ failed to provide any meaningful rationale" beyond those internal inconsistencies. (DE 13-2, Pl. Mem. at 8). This is incorrect. The ALJ specifically noted that the "restrictions listed in the responses [were] not supported by objective evidence, including Dr. Irwin's treatment notes or the medical evidence as a whole." (AR 449); *see also* 20 C.F.R. § 404.1527(c)(4). The ALJ gave some weight to Dr. Irwin's opinions, "to the extent those opinions objectively addressed the nature of the claimant's physical impairments." (AR 449). Substantial evidence in the record supports the ALJ's decision.

Internally, the record shows several blatant inconsistencies with the questionnaires. Dr. Irwin inconsistently opined that Morris was both "[c]apable of low stress jobs" and "[i]ncapable of even 'low stress' jobs." (*compare* AR 383 *with* AR 388). Dr. Irwin inconsistently cited that Morris could "rarely" twist, stoop, bend, or climb stairs on one questionnaire, while citing that Morris could "never" twist, stoop, bend, or climb stairs in another. (*compare* AR 384 *with* AR 390). While Dr. Irwin described Morris as having "significant limitation with reaching, handling, or fingering," he also described Morris as having **no** "significant limitations with reaching, handling, or fingering." (*compare* AR. 384 *with* AR 390). In her brief, Morris objects to the ALJ's use of these inconsistencies when discounting Dr. Irwin's opinions because the questionnaires were each referencing different impairments. (DE 13-2, Pl. Mem. at 8). However, this argument fails, as Dr. Irwin clearly cross-referenced Morris' multiple impairments when completing the questionnaires. (*See e.g.,* AR 382, 384) (referencing hip pain and osteoarthritis "OA" within a questionnaire on diabetes).

Even despite these internal inconsistencies, Morris has pointed to no evidence in the record rebutting the ALJ's claim that Dr. Irwin's opinions are not supported by either his treatment notes, or the objective medical record. Inconsistent with Dr. Irwin's opinion of extremely restrictive physical limitations (AR 377-391), the record contains evidence of normal gait, intact sensation, and some diminished range of motion (AR 372); a normal hip x-ray from August 2011 (AR 403); evidence that Morris could "sit, stand, and walk independently without any assistance" (AR 373); and examination findings of normal posture and gait, no difficulty getting on and off the examination table, full strength and intact sensation, and ability to knee squat, heel-to-toe walk, and tandem walk (AR 930-931). This Court finds that the ALJ has given good reasons for his treatment of Dr. Irwin's opinions, and finds no error.

Further, this Court finds no merit in Morris' objection to the ALJ's treatment of Dr. Bress's opinion. Morris argues that the ALJ "gave significant weight to Dr. Bress, yet failed to include Dr. Bress's opinion that a wheeled walker would be beneficial." (DE 13-2, Pl. Mem. at 6). In full, Dr. Bress opined that Morris could "[s]it, stand, and walk independently without any assistance, although a wheeled walker would be beneficial." (TR 373). During that same visit, Dr. Bress opined that Morris "can ambulate without assistance and stand without assistance." (AR 450; AR 372). Given the inconsistency, this Court finds that the ALJ's decision to give limited weight to Dr. Bress's suggestion is supported by substantial evidence, and no error has occurred. *See Rogers v. Commissioner of Social Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) ("Consistency of the various pieces of information contained in the record should be scrutinized").

## II. Conclusion

For the reasons set forth above, the Court hereby **ORDERS** as follows:

1. Plaintiff's motion for summary judgment (DE 13) is **DENIED**;

2. The Commissioner's motion for summary judgment (DE 15) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion and Order will be entered contemporaneously.

Dated September 29, 2017.

*Karen K. Caldwell*
KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY